UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MORTGAGE FUND '08 LLC,<br><br>　　　　　　Debtor.<br>_____/<br><br>NANCY BERGERON,<br><br>　　　　　　Appellant,<br><br>　v.<br>SUSAN L. UECKER, in her capacity as Trustee of the Mortgage Fund '08 Liquidating Trust,<br><br>　　　　　　Appellee. | Case No. 14-cv-01383-SI<br><br>**ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT** |

　　　　Appellant Nancy Bergeron seeks review of a final bankruptcy court order disallowing a portion of her claim in the bankruptcy of Mortgage Fund '08. After reviewing the record and considering the parties' briefs, the Court AFFIRMS the judgment of the bankruptcy court.

**INTRODUCTION**

　　　　This case arises out of the bankruptcy of Mortgage Fund '08 ("MF08"). Appellant Nancy Bergeron was an investor in MF08, and she filed a proof of claim in the amount of $400,000. Following a hearing, the bankruptcy court allowed the claim in the reduced amount of $27,607.18, and disallowed the remainder of the claim. The bankruptcy court found that the undisputed evidence showed that Bergeron had originally invested $132,000 in MF08 in 2008, and that she had withdrawn approximately $118,000 from her account prior to the MF08 bankruptcy, leaving a

balance of $23,181.26 as of June 30, 2009. The bankruptcy court allowed Bergeron's claim in the amount of $27,607.18, which consisted of her MF08 account balance plus accrued interest through the petition date. The remainder of Bergeron's claim, which she characterized as fraud damages and which included the $118,000 that Bergeron had withdrawn from her MF08 account, was disallowed. In this appeal, Bergeron contends that the bankruptcy court erred by disallowing the portion of her claim that sought fraud damages.

## BACKGROUND

MF08 was formed in December 2007 as a Delaware limited liability company for the stated purpose of raising capital through the issuance of notes to investors and making loans secured by real estate with the funds raised. *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 101). In reality, MF08 was part of a fraudulent scheme perpetrated by Walter and Kelly Ng in which investors' money was funneled from MF08 to R.E. Loans LLC ("R.E. Loans"), another company that was also owned and controlled by the Ngs. R.E. Loans was an investment company that issued secured loans to real estate developers. The Ngs owned and managed The Mortgage Fund, LLC, which was MF08's sole owner, manager, and member. Bar-K, Inc., an affiliated entity owned by Kelly Ng and his brother Barney, served as MF08's loan servicer and broker.

On September 12, 2011, several investors of MF08 filed a Chapter 7 involuntary bankruptcy petition against MF08 in the Bankruptcy Court for the Northern District of California.[1] *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 1). On February 3, 2012, the bankruptcy court appointed appellee Susan L. Uecker as the Liquidating Trustee of the Mortgage Fund '08 Liquidating Trust ("Liquidating Trust") pursuant to a Liquidating Trust Agreement. (Bankruptcy Dkt. 101).

**1.    Bergeron's Proof of Claim**

On February 6, 2012, appellant Nancy Bergeron filed a proof of claim in the bankruptcy of

---

[1] The bankruptcy court subsequently entered an order converting the case to one under Chapter 11 of the Bankruptcy Code. *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 11).

2

MF08.  *See* ECF No. 3-4 at 1.  The proof of claim listed a secured claim in the amount of $175,814.32, and an unsecured claim in the amount of $225,000, with the basis for these claims listed as "Money Loaned/Fraud."  *Id.*  An attachment to the claim explained the two components.  *Id.* at 2.  Bergeron described the secured claim of $175,814.32 as the "reinstatement claim," and stated that this was "the amount she would have had but for the fraud."  *Id*.  Exhibit 3 to the proof of claim, labeled "Reinstatement Claim," included Bergeron's MF08 account statement, and a recalculation of Bergeron's MF08 account balance as if Bergeron had never withdrawn any money from her MF08 account, plus interest, showing a total of $175,814.32.  *Id.* at 16-19.  The unsecured claim of $225,000 was "a demand for economic and noneconomic damages" on the basis of "[f]raud after the investment, leading to foreclosure and loss of home, animals, property and dignity as explained in Exhibit No. 1 and No. 2."  *Id.*

One of the exhibits to the proof of claim was a complaint filed by Bergeron in a related MF08 adversary proceeding.  The adversary complaint set forth Bergeron's fraud allegations and the basis for fraud damages that Bergeron sought in the proof of claim.  Bergeron's adversary complaint alleged that in 2006, she invested $218,500 in R.E. Loans.  ECF 3-4, Ex. 1 ¶ 24.  In December 2007, Bergeron sought to invest the rest of her savings in R.E. Loans.  *Id.* ¶ 32.  The adversary complaint alleged that Susie Parker, an administrator of R.E. Loans, notified Bergeron that R.E. Loans was no longer taking new money, but that the company was working to create a new fund to accept investments.  *Id*.  That new fund, MF08, opened for deposits in January 2008, and in early 2008 Bergeron invested $132,000 with MF08.  *Id.* ¶ 33.

The adversary complaint alleged that MF08 was created to transfer investments in MF08 to R.E. Loans, and that MF08 was created to "maintain the illusion of liquidity" in R.E. Loans.  *Id*. ¶ 40.  According to Bergeron, by September 1, 2008, the managers of R.E. Loans, including Susie Parker, "knew, and concealed, the fact that R.E. Loans, LLC, could not satisfy its obligation to make periodic interest payments to its investors or satisfy its promise to fund principal withdrawals on 60-days [sic] notice."  *Id.* ¶ 5. [2]

---

[2]  The exhibits also included a letter from Bergeron explaining her situation in her own words.  *Id.* at 20-25.  Also attached as "Exhibit B" was an order from the California Department of

The adversary complaint alleged that in order to qualify for a loan to purchase a farm in Oregon, Bergeron needed proof of her interest income from her R.E. Loans and MF08 investments. *Id.* ¶ 56. According to the adversary complaint,

> On September 17, 2008, Susie Parker faxed a letter verifying Plaintiff NANCY BERGERON's interest income to a potential lender. The letter was signed "Susie Parker, Administrator, R.E. Loans LLC, Mortgage Fund '08 LLC."
>
> Susie Parker's September 17, 2008, letter confirmed that Plaintiff NANCY BERGERON had two investment accounts with the account statements attached. Susie Parker stated: "Both accounts earn interest at a rate of 8% annually. Interest is paid quarterly, but monthly withdrawals of estimated interest are permitted. Nancy's accounts will be earning approximately $29,077 per year at their current balance."

*Id.* ¶¶ 57-58. The adversary complaint alleged that because Parker was aware that R.E. Loans was indefinitely unable to access funds to pay investors, "the representations of interest in future interest in Susie Parker's September 17, 2008, letter were false." *Id.* ¶ 59.

The adversary complaint alleged that Susie Parker sent a second fraudulent letter on October 17, 2008, to "Sandy" at American Home Lending, LLC, verifying Bergeron's interest income.

> The October 17, 2008, memo included a 4-page form Mortgage Fund '08 Secured Promissory Note. In her note typed on the memo, Suzy Parker wrote: "Hi Nancy – This is a copy of the note we issue which clearly stately (sic) in item 1 on the first page that the rate will not be less than 8%. Let me know if you need anything else. Susie."

*Id.* ¶ 63. Before Bergeron closed on her farm, Parker allegedly told her that "everything was fine," but that there was a temporary problem with principal withdrawals from R.E. Loans, so Bergeron would need to withdraw her down payment from MF08. *Id.* ¶ 64. Bergeron closed escrow on her farm property on or about October 23, 2008, and withdrew about $99,000 from her MF08 account

---

Corporations forbidding MF08 and R.E. Loans, among others, from "offering or selling or buying or offering to buy any security in the State of California" because of alleged fraud. ECF No. 3-5 at 5. Another document marked "Exhibit 2" was an email correspondence between Bergeron's attorney and counsel for the creditors committee. *Id.* at 7-15. In that email correspondence, Bergeron's attorney noted that Bergeron had filed a claim in the bankruptcy of R.E. Loans for the loss of her R.E. Loans investment.

4

to use in connection with this purchase. *Id.*; Appellant's Opening Br. at 7. At some point Bergeron stopped receiving MF08 and R.E. Loans interest payments, and she was unable to meet her mortgage payments. Bergeron lost her farm to foreclosure in December 2010. *Id.*

Thus, through the adversary complaint attached to Bergeron's proof of claim, Bergeron claimed that she relied on Parker's allegedly fraudulent statements about her expected MF08 and R.E. Loans interest income in order to qualify for the loan to purchase the farm. Bergeron claimed that if Parker had never made the misrepresentations in the letters faxed to the two lenders, Bergeron would not have qualified for the loan and would not have withdrawn her money from MF08.[3] Although Bergeron's adversary complaint quoted from the two letters allegedly sent by Suzy Parker to lenders, Bergeron did not attach copies of those letters to the proof of claim nor did she explain whether or why the letters were unavailable.

### 2.    Trustee's Objection to Proof of Claim

On November 27, 2013, the Liquidating Trustee of MF08 ("the Trustee") filed an objection to Bergeron's claim. ECF No. 3-6. The Trustee argued that there was no basis for the $225,000 claim for economic and noneconomic damages because Bergeron's adversary proceeding had been dismissed with prejudice. *Id.* at 2. As to the $175,814.32 reinstatement claim, the Trustee argued that Bergeron's MF08 account history reflected a balance of only $23,181.26. *Id.* The Trustee noted that MF08's Summary of Schedules Schedule D listed Bergeron as a creditor with a claim in the amount $23,181.26, and that while the Trustee had no objection to allowing a claim for $23,181.26, "Bergeron has not submitted any documentary evidence establishing that she is entitled to any amount above that." *Id.*

The Trustee attached a declaration and three exhibits to the objection. The first exhibit was Bergeron's proof of claim. ECF No. 3-8. The second was Bergeron's MF08 account history. ECF

---

[3] Bergeron's MF08 account history showed that she received approximately $18,000 in disbursements after she closed escrow on the farm. Bergeron never claimed that the disbursements of $18,000 were in any way connected to the alleged Susie Parker fraud, yet Bergeron's "reinstatement" claim sought the entire amount of her original investment plus accrued interest.

5

No. 3-9. The final exhibit was the bankruptcy court's order dismissing Bergeron's adversary proceeding with prejudice. ECF No. 3-10. The order provides no explanation of why the court dismissed Bergeron's proceedings. *See id.*[4]

In accordance with Bankruptcy Local Rule 9014-1(3)(A), the Trustee filed a Notice and Opportunity for Hearing stating, in relevant part, "that an objection to the Trustee's Bergeron Objection or request for hearing must be accompanied by any declaration or memoranda of law that the objecting party wishes to present to the Court in support of its/his/her position." ECF No. 3-12 at 2. At the bottom of the page, in bold type, the Trustee reproduced Bankruptcy Local Rule 30071-1(b), which provides:

> where a factual dispute is involved, the initial hearing on a claim objection shall be deemed a status conference, at which the Bankruptcy Court will not receive evidence. Where the objection involves only a matter of law, the matter may be argued at the initial hearing on the claim objection.

*Id.*

### 3. Bergeron's Objection to the Trustee's Objection

On December 25, 2013, Bergeron submitted an "Objection to the Liquidating Trustee's Objection" and a request for a hearing. ECF No. 3-15. Bergeron argued, *inter alia*, that her "withdrawal of $99,000 as a result of Susie Parker's misrepresentations is the basis of Nancy Bergeron's reinstatement claim, not inconsistent with it." *Id.* at 12. Bergeron also asserted, "[a]lternatively, Nancy Bergeron requests a hearing because discovery is required. The Liquidating Trustee should produce Nancy Bergeron's investor file and all Mortgage Fund '08 documents related to Susie Parker's communications with Nancy Bergeron, her escrow officers, and her lender at the time of the closing of escrow for Nancy Bergeron's purchase of the farm in Roseburg, Oregon." *Id.* Bergeron did not explain why this discovery was needed, or how these

---

[4] During the hearing on the Trustee's objection, discussed below, the bankruptcy court noted that the adversary proceeding was dismissed with prejudice because Bergeron was "seeking a finding of nondischargeability on an entity that wasn't going to get a discharge." ECF No. 3-43 at 14-15. According to the bankruptcy court, it was agreed that the issue of how much Bergeron is owed, if anything, would be adjudicated through the claims process. *Id.*

documents would support her proof of claim. Bergeron also did not explain why she needed documents related to Susie Parker's communications when it appeared that Bergeron herself possessed the allegedly fraudulent letters. On the issue of her claim for economic and noneconomic damages, Bergeron stated that a transcript of the adversary proceeding was required for a fair determination on the Trustee's objection, presumably to show that the dismissal of the adversary complaint did not bar Bergeron's proof of claim. *Id.*

Bergeron also filed a "Request for Status Conference at Initial Hearing," in which she stated that she needed discovery "to determine whether there is a factual dispute and, if so, to resolve it." ECF No. 3-14 at 1. As with the objection to the objection, Bergeron stated that she would need the Trustee to produce Bergeron's MF08 investor file, and "all documents relating to Susie Parker's communications with Nancy Bergeron, her escrow officers, and her lender at the time of the close of escrow[.]" *Id.* at 1-2.

**4.     Additional Filings Prior to Hearing**

On February 5, 2014, the Trustee responded to Bergeron's objection. ECF No. 3-18. The Trustee reiterated that there was no dispute that Bergeron withdrew all but $23,181.26 from her MF08 account, and thus there was no basis for the remainder of the reinstatement claim. *Id.* at 4. The Trustee argued that Bergeron was not entitled to $225,000 in economic and noneconomic fraud damages because she had failed to plead or substantiate a viable fraud claim. *Id.* at 5-10. The Trustee asserted that Bergeron "ha[d] failed to raise an issue of factual dispute as to the basis and/or validity of the Bergeron Claim," and thus there was no need for discovery and that a status conference was not required under Local Rule 3007-1(b).

Bergeron submitted a "Reply to the [Trustee's] Response" on February 19, 2014. ECF No. 3-22. The reply reiterated Bergeron's earlier arguments regarding the MF08 and R.E. Loans fraud, and generally asserted that Bergeron had properly pleaded a fraud claim. *Id.* With the reply, Bergeron submitted a supplemental declaration in which she stated that, had she known of MF08's fraudulent payments to R.E. Loans, she never would have withdrawn money from MF08 to invest in her farm. ECF No. 3-23. Bergeron's counsel also filed a declaration introducing three exhibits.

7

ECF No. 3-24. The first exhibit was a copy of MF08's checking account statement for September 2008. ECF No. 3-25. The second was a document entitled "Note Purchase Agreement" evidencing a purchase of a note by Walter Ng from an entity named the Morgan Building Partnership. ECF No. 3-29. The third exhibit was an email from an individual to the managers of R.E. Loans discussing a note assignment. ECF No. 3-30. This exhibit also contained a document submitted along with a complaint the Trustee filed in a related MF08 proceeding. *Id.*

### 5. Bankruptcy Court Hearing and Ruling

On February 19, 2014, the bankruptcy court held a hearing on Bergeron's proof of claim and the objection thereto. ECF No. 3-43. Counsel for Bergeron, Mr. Brower, argued, *inter alia*, "It's beyond me that anybody who was here could think that Nancy Bergeron was not the victim of a fraud to induce her to withdraw her money." *Id.* at 12. The court interjected:

> The problem with that, when you look at the dollars that she had invested in MF08 and what she took out, even at 8 percent interest . . . it would only net . . . $2,600 annually, or $215 a month. But to say that she's now entitled to an additional $225,000 and basically wants the money that she withdrew and received and then chose to invest in other places, if I took that analysis to all of the MF08 investors, . . . they could come into this Court and say, well, we invested, but our damages are greater because we were defrauded in investing in MF08. And for those who took their money out, they'd come back and say, well, I invested in something else and I thought I'd have the interest. There's no way to quantify or justify those types of damages here.

*Id.* at 14.

Mr. Brower and the bankruptcy court then engaged in the following exchange:

> **Brower**: . . . I think what you're doing is extending the time period into the present. I look at it at the time of the event. . . .
>
> **Court**: Which event is that?
>
> **Brower**: When Susie Parker told the lender, the real estate broker and Nancy Bergeron, who were all in a meeting, . . . what was going to happen. . . .
>
> **Court**: Okay. Well, the problem is I have nothing—there's letters you refer to. . . . The problem I have here is—let me ask you this. Do you have any dispute that, after the money your client did receive, she had a balance of roughly $23,000 to $27,000 left in MF08? . . .

8

> **Brower**: Oh yeah, absolutely. We have . . . no dispute about those numbers. Where the dispute is, is that had the representation not been made and had she not withdrawn her money, Nancy Bergeron's life . . . would be so much better than it actually is.
>
> **Court**: Even without the money that she was paid, roughly the $100,000[?]
>
> **Brower**: Absolutely.
>
> **Court**: Well, here's the problem I've got, is this. With only having a balance of $23,000, $27,000 in there, if she was expecting to receive $800 a month in interest, there's no way that she would have had that money from the remaining investment in MF08, if she's acknowledging, as you're saying, all I have is the balance of assuming $23,000 to $27,000. That would net her about $215 a month. Her other income was Social Security income. So how—
>
> **Brower**: She wouldn't have bought the ranch. That's the whole point. She wouldn't have done it. If they would have just said, there's a one-year moratorium, or the lock box is closed, we can't fund it, or any of the other honest things they could have said, she would not have bought the ranch . . . .
>
> **Court**: Yeah, but on the representations that are in—that you're referencing in your paper is that—I don't have copies of the letters. I have no documentation to support any of this, then. You keep talking about some sort of meeting you were in. I'm simply saying, there's no evidence to support the proof of claim.
>
> **Brower**: Well, I'll -- I can just, I mean, I talk to her all the time. I mean, I sort of know these facts like in my sleep.
>
> **Court**: The problem is I have no evidence before me that supports the proof of claim.
>
> **Brower**: Well, I guess that's my fault, then.

*Id*. at 14-18.

The bankruptcy court then issued its ruling:

> At this point, Bergeron has failed to raise any factual disputes as to the basis and validity of the claim. Counsel for Ms. Bergeron acknowledges that the balance[] owed Ms. Bergeron is [$27,607.18], as the . . . Trustee's counsel has indicated. . . . And Mr. Brower, you don't disagree with that number?

*Id.* at 22. Mr. Brower responded that he did not disagree. *Id.* The court held that it found "no substance or merit to [Bergeron's fraud] argument." *Id.* at 23. The court stated:

> The numbers don't justify the interest that's designated in the opposition to the objection, that she would have received some $800 a month, when with only a balance of roughly $27,000 at 8 percent

9

> per annum would net about $215 a month, [which] would be insubstantial to support Ms. Bergeron.

*Id.* The court also based its decision on the lack of evidence in the record:

> There is no documentation or other support that Ms. Bergeron was defrauded into taking the money out of MF08. There may have been representations as to an account balance before the deduction of the roughly $100,000, what she was earning on interest, and that may in fact be true, and that there was a representation made that if this money were left in there it would net roughly the $29,000 a month. But without having any of the written representations allegedly made by Susie Parker or anyone from MF08, the Court cannot find any substance to the claim and will sustain the objection to the claim and will allow the claim in the amount of $27,607.18.

*Id.*

On March 14, 2014, Bergeron filed a new proof of claim in the bankruptcy court in the amount of $175,814.32. ECF No. 3-44 at 1. The basis for the claim is listed as "Fraud-Restitution." *Id.* Bergeron attached a statement to the claim entitled "Facts Supporting Fraud/Equitable Restitution," which reiterated facts substantially similar to those included in the first proof of claim's attached complaint. *Id.* at 2. The statement again relied on and quoted from the letters allegedly sent by Susie Parker, but the March 14, 2014 claim still did not attach the Parker letters. *See id.* at 2-4.

On March 26, 2014, Bergeron filed her notice of appeal with this Court, seeking review of the bankruptcy court's order disallowing her first proof of claim. *See* Notice of Appeal, Dkt. 1.

## LEGAL STANDARD

On appeal, a bankruptcy court's conclusions of law are reviewed *de novo*, and its factual findings are reviewed for clear error. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Its disallowance of a claim as a matter of law is reviewed *de novo*. *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1020 (9th Cir. 2012).

## DISCUSSION

Bergeron contends that the bankruptcy court erred by disallowing most of her claim because she adequately stated a claim for fraud and supported her proof of claim. Bergeron argues

1    that to the extent that the bankruptcy court found that the proof of claim was deficient, the court
2    should have allowed Bergeron to amend her proof of claim, or the court should have permitted
3    discovery and resolved the matter at a subsequent evidentiary hearing. The Trustee argues that
4    Bergeron failed to introduce evidence in support of her claim for fraud damages, and that the
5    bankruptcy court correctly disallowed Bergeron's claim.

6    The Court agrees with the Trustee and finds that the bankruptcy court did not err in
7    disallowing most of Bergeron's claim. The bankruptcy court allowed the claim in the amount of
8    $27,607.18 based upon the undisputed evidence of the balance in Bergeron's MF08 account. The
9    remainder of Bergeron's claim lacked any documentary support. Bankruptcy Rule 3001(a) states
10   that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R.
11   Bankr. P. 3001(a). Item 7 on the official form directs creditors to attach "any documents that
12   support the claim," or to provide an explanation if documents are unavailable. Official Form 10,
13   Item 7. Rule 3001(c)(1) further provides, "[w]hen a claim, or an interest in property of the debtor
14   securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of
15   claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or
16   destruction shall be filed with the claim." Fed. R. Bankr. P. 3001(c)(1). "A proof of claim
17   executed and filed in accordance with these rules shall constitute *prima facie* evidence of the
18   validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *In re Heath*, 331 B.R. 424, 436
19   (B.A.P. 9th Cir. 2005) (proof of claim that fails to comply with Rule 3001(c)(1) not entitled to
20   *prima facie* validity); *see also Sierra v. Hoskins*, 530 Fed. App'x. 619, 620 (9th Cir. 2013) (mem.)
21   (affirming disallowance of a claim for failure to provide adequate support).

22   Here, although Bergeron's claim for fraud damages is based on specific writings -- the
23   letters allegedly faxed by Parker to Bergeron and her potential lenders -- Bergeron failed to submit
24   the letters to the bankruptcy court and she never provided an explanation for this failure. Bergeron
25   repeatedly quoted from the letters in her filings, and thus it appears that Bergeron possesses the
26   letters (and Bergeron never stated that she did not have the Parker letters). Contrary to her
27   arguments on appeal, Bergeron's proof of claim was not entitled to *prima* facie validity because
28   she did not submit the Parker letters or any other documents substantiating her claimed fraud

United States District Court
Northern District of California

11

losses in her multiple and voluminous filings prior to the hearing. The Court also disagrees with Bergeron's assertion the bankruptcy court had an obligation to grant her leave to amend or to allow her to conduct discovery. Bergeron did not make a showing that she needed discovery in this case. The critical pieces of evidence that are lacking—the Parker letters and evidence showing damages—were both within Bergeron's control.

The bankruptcy court also appeared to find that Bergeron could not reasonably have relied on representations about her future MF08 income after she withdrew more than 70 percent of her MF08 investment, leaving an amount that would be insufficient to make her mortgage payments. The Court agrees with the bankruptcy court's assessment, and finds that Bergeron did not show she was entitled to the fraud damages she sought in the proof of claim. The Court further notes that Bergeron has filed a claim for her investment losses in the separate R.E. Loans bankruptcy, and nothing in this order precludes her from pursuing that claim.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the judgment of the bankruptcy court.

**IT IS SO ORDERED**.

Dated: March 30, 2015

SUSAN ILLSTON
United States District Judge